# EXHIBIT A





**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**IN RE WORLD TRADE CENTER**
**DISASTER SITE LITIGATION**

**Master Docket No.: 21 MC 100 (AKH)**

## CASE MANAGEMENT ORDER No. 3

This Order outlines the timing of and manner in which discovery limited to the subject matters of certain potentially dispositive motions, identified herein, that it is anticipated will be made by one or more Defendants in these actions is to be conducted in the above-captioned World Trade Center Disaster Site Litigation (the "Litigation"). This case management order ("CMO No. 3") is the product of recommendations by Plaintiffs' Liaison and Steering Committee Counsel, Defendants' Liaison and Steering Committee Counsel, and counsel for other parties, but departs from those recommendations and reflects my own requirements in certain requests.

### I.    Definitions

As used herein, the World Trade Center Site shall be defined as the 16-acre site including the sites of the buildings known as 1 World Trade Center, 2 World Trade Center, 3 World Trade Center (a/k/a the Marriot World Trade Center Hotel), 4 World Trade Center, 5 World Trade Center and 7 World Trade Center, as well as the surrounding plaza and underground shopping, parking and public transit facilities. The World Trade Center Site shall also be defined to include the World Financial Center and Winter Garden, the Verizon Building at West and Vesey Streets, the Deutsche Bank Building at Liberty and Greenwich Streets, 90 West Street, St Nicholas Church, and 125 Cedar Street, as well as the Fresh Kills Landfill site, the debris-removal barges, piers and transfer stations. This definition is provided for the sole purpose of

MICROFILM
9:00 AM
FEB 14 2005

construing the provisions of CMO No. 3 and may not be utilized or cited by the parties for any other purpose.

## II.    Defendants' Motions

Defendants' Liaison and Steering Committee Counsel previously have identified for the Court and for Plaintiffs' counsel certain motions that they anticipate will be made by one or more Defendants and which may be dispositive of some or all of the individual actions in the Litigation. The Court has expressed an interest in having focused and specific discovery ("limited" discovery) undertaken regarding the subject matters of these motions in order to develop an appropriate record for these motions. This CMO No. 3 sets forth the plan for this limited discovery and the Defendants' dispositive motions to follow.

Defendants contemplate the following motions for summary judgment or judgment on the pleadings dismissing some or all of Plaintiffs' claims with prejudice based on various provisions of statute or common law proving immunity to defendants against plaintiffs' claims. Among such provisions are:

A.    The New York State Defense Emergency Act, N.Y. Unconsol. Law §§ 9101-9200;

B.    The New York State and Local Natural and Man-Made Disaster Preparedness Law, N.Y. Exec. Law §§ 20-29-g;

C.    Principles of common law immunity, to be identified, in reasonable detail within ten (10) days of the entry of this Case Management Order;

D.    Principles of federal immunity to be identified in reasonable detail within ten (10) days of the entry of this Case Management Order; and    .

2

E.      Those Defendants whose alleged liability would derive from their status as owner or lessee of the property at issue (or some part thereof), but who were not in control or possession of the relevant property at the time of Plaintiffs' claimed injuries may also file motions for summary judgment or for judgment on the pleadings, dismissing all or part of the claims against them.  Such defendants, within ten (10) days of the entry of this Case Management Order shall identify with specificity:

     1) The property involved; and

     2) The status of defendants with regard to such property; and

F.  Those Defendants whose alleged liability would derive from their status as owner or lessee of the property at issue (or some part thereof), but who were not in control or possession of the relevant property at the time of Plaintiffs' claimed injuries shall produce the specific documents reflecting the defendant's status and that of all others relating to the property.

### III.    Order of Discovery

**A.**    ***Defendants' Preliminary Disclosure of Reasonably Ascertainable Information Relevant To Their Motions And Detailed Chronological Declarations***

1.    **Briefs And Opinions Relating To Previously Filed Dispositive Motions In Other World Trade Center Litigations**

Within five (5) days of the entry of this CMO No. 3, Defendants' Liaison and Steering Committee Counsel shall provide Plaintiffs' Liaison and Steering Committee Counsel and the Court with all judicial opinions, previously filed briefs and supporting documentation in other World Trade Center Litigations not pending before this Court that are in Defendants' possession and relate to the subject matters of the motions identified herein.

2.    **Preliminary Disclosure Of Organizations Involved In Rescue, Recovery, Debris Removal And/Or Construction At The World Trade Center Site And Documents Of Which Defendants Are Currently Aware And Intend To Rely Upon In Support Of The Motions Described Herein**

Within ten (10) days of the entry of this CMO No. 3, Defendants' Liaison and Steering Committee Counsel shall provide to Plaintiffs' Liaison and Steering Committee Counsel, a list identifying all city agencies and non-city entities that worked at or were in any way involved in the rescue, recovery, cleanup, debris removal and/or construction at the World Trade Center Site. Within thirty (30) days of the entry of this CMO No. 3, Defendants' Liaison and Steering Committee Counsel shall also provide to Plaintiffs' Liaison and Steering Committee Counsel copies of documents, if any, of which Defendants are then aware, of which Defendants intend to rely in support of their motions.

4

3.    **Defendants' Detailed Chronological Declarations**

Within thirty (30) days of the entry of this Case Management Order, each Defendant (except, as to the Contractor Defendants, only the four prime Contractors—Bovis, Turner, Tully, and Amec) shall provide to Plaintiffs' Liaison and Steering Committee Counsel a detailed chronological declaration that shall set forth the key arguments that the Defendant anticipates may be made to support the anticipated motions identified herein. In addition to key arguments then anticipated, each Defendant's detailed chronological declaration shall also set forth the following information.

(a)    The scope of work that the Defendant performed at the World Trade Center Site;

(b)    Where the Defendant performed work at the World Trade Center Site;

(c)    The dates when the Defendant began work, performed work, and concluded work at the World Trade Center Site;

(d)    Whether the Defendant entered into any contract for the work done at the World Trade Center Site, as well as copies of such contracts, if any exist;

(e)    The Defendants shall also disclose the internal "chain of command" structure for each entity during the relevant time period;

(f)    Defendants' declarations shall include: all declarations and orders issued by City, State and Federal agencies and departments governing: A) Occupational safety and health of workers at the site; and B) the provision of respiratory equipment to workers at the site and C) the access of workers, including firefighters, to the site;

5

(g)    The area of the World Trade Center Site the Defendant was assigned to, if

applicable; and maps of the World Trade Center Site depicting its division into

quadrants, to the extent the Defendant possesses such maps and if any such maps

in fact exist.

(h)  Information concerning Defendants and/or subcontractors involved in

producing or providing respirators, air quality, or safety at the World Trade

Center site.

Defendants shall have the duty to supplement all discovery obligations within five days

after learning of information which, had it been known, should have been disclosed pursuant to

this CMO.

**B.**    ***Identification of and Discovery Requests to City Agencies and/or Departments***

    **1.**    **Plaintiffs' Identification of City Agencies and/or Departments From Which**
        **They Intend to Seek Discovery and Related Discovery Requests**

Within twenty (20) days of the entry of this CMO No. 3, Plaintiffs' Liaison and Steering

Committee Counsel shall provide to Defendants' Liaison and Steering Committee Counsel a list

identifying the agencies and/or departments of the City of New York from which Plaintiffs seek

documents and information regarding the subject matters of the motions identified herein.

Within fifty (50) days of the entry of this CMO NO. 3, Plaintiffs' Liaison and Steering

Committee Counsel shall provide to Defendants' Liaison and Steering Committee Counsel a

detailed chronological declaration that shall set forth the key arguments that Plaintiffs then

anticipate may be asserted in opposition to Defendants' anticipated motions identified herein.

6

The Court will hold a Case Management Conference on Monday, April 18, 2005, at 4:00 P.M. to regulate further discovery, the filing of motions and oppositions and replies, and to entertain further case management recommendations.

SO ORDERED



Alvin K. Hellerstein, U.S.D.J.

Dated: New York, New York
      February 7, 2005

CONSENTED TO:

Plaintiffs' Liaison Counsel          Plaintiffs' Liaison Counsel

_____     _____
By:  Andrew Carboy, Esq.          By:  Paul J. Napoli

Dated: New York, New York
      February __, 2005

CONSENTED TO:

Defendants' Liaison Counsel         Defendants' Liaison Counsel

_____     _____
By:  James E. Tyrrell, Esq.        By:  Richard A. Williamson

Dated: New York, New York
      February __, 2005

7

# EXHIBIT B

21 MC 102

In Re: World Trade Center Lower Manhattan Disaster Site Litigation

Summary of Information from Short Form "Check Off" Complaints"

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| No. | Plaintiff | Docket No. | Alleges Work for Tully or Named Sub-Contractors | Work for Non-"Tully" Companies | Job Title | Work Sites Other than "WTC Site" as Defined in CMO 3 | Alleges Work at DB Building other than from 1/8/02 to 7/1/02 |
| 1 | Acosta, Byron | 07cv1552 | No | LVI Environmental Services, Inc. | Handler | | Yes |
| 2 | Adriano, Luis | 07cv4445 | No | ETS Contracting and PAL | Asbestos handler | 1 Liberty Plaza; Post Office | Yes |
| 3 | Agudelo, Gladys | 07cv4446 | No | Comprehensive Environmental | Asbestos cleaner | 1 Federal Plaza; 100 Church Street; 70 Pine Street; 75 Park Place; High School of Economics and Finance | No |
| 4 | Ali, Enrique | 07cv1554 | No | PAL Environmental Safety | Supervisor | 1 Liberty Plaza | Yes |
| 5 | Allivar, Raul | 06cv9821 | No | PAL Environmental Safety | Handler | 150 Broadway; 1 Liberty Plaza; Post Office (90 Church Street) | Yes |
| 6 | Alvarez, Maria | 05cv10135 | No | Kiss Construction and PAL | Handler | 90 Trinity Place; High School of Economics & Finance; Post Office; Stuyvesant High School | Yes |
| 7 | Alvarracin, Jose | 07cv1556 | No | Pinnacle Environment | Asbestos handler | Post Office | Yes |
| 8 | Ascencio, Ivan | 07cv1460 | No | ETS Contracting | Laborer-asbestos | High School of Economics & Finance | Yes |
| 9 | Atiencia, Marcelo | 07cv1562 | No | LVI Environmental Services, Inc. | Handler | Stuyvesant High School | Yes |
| 10 | Ballon, Peter | 07cv5336 | No | Pinnacle Environmental Corp. | Supervisor | Post Office | Yes |
| 11 | Barahona, Jose | 07cv5550 | No | Pinnacle Environmental Corp. and Trade Winds Environmental Restoration | Handler | 100 Church Street | Yes |
| 12 | Betancourt, Hector | 07cv4453 | No | ETS Contracting, Inc. and PAL Environmental Safety | Handler | 1 Liberty Plaza | Yes |
| 13 | Burgos, Leopoldo | 07cv1473 | No | PAL Environmental Safety | Handler | | Yes |
| 14 | Caguana, Manuel | 06cv11968 | Yes: EROC | None | Laborer | | Yes |

1/8

21 MC 102
In Re: World Trade Center Lower Manhattan Disaster Site Litigation

Summary of Information from Short Form "Check Off" Complaints"

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| No. | Plaintiff | Docket No. | Alleges Work for Tully or Named Sub-Contractors | Work for Non-"Tully" Companies | Job Title | Work Sites Other than "WTC Site" as Defined in CMO 3 | Alleges Work at DB Building other than from 1/8/02 to 7/1/02 |
| 15 | Calero, Ivan | 07cv1575 | No | PAL Environmental Safety | Shop steward | | Yes |
| 16 | Calle, Wilson | 07cv1578 | No | Pinnacle Environment | Asbestos handler | Post Office | Yes |
| 17 | Campoverde, Rey R. | 07cv5280 | No | PAL Environmental Safety | Hander | Post Office | Yes |
| 18 | Campozano, Esther | 07cv4459 | No | Pinnacle Environment | Asbestos handler | | Yes |
| 19 | Cardenas, Edison | 07cv1580 | No | PAL Environmental Safety | Handler | Millenium Hilton Hotel | Yes |
| 20 | Castillo, Silvia | 05cv1718 | No | Branch | Handler | | Yes |
| 21 | Chuva, Nancy | 07cv1589 | No | Trio Asbestos | Asbestos handler | Post Office | Yes |
| 22 | Cintron, Yolanda | 06cv5631 | No | CES | Asbestos handler | 160 Water Street; Stuyvesant High School | Yes |
| 23 | Cortez, Jorge E. | 07cv5394 | No | Gait John Corp. | Handler | | Yes |
| 24 | Cortijo, Lidia | 07cv317 | No | LVI Environmental Services, Inc., PAL Environmental Safety and Pinnacle Environmental Corp. | None | 101 Barclay Street; 4 Albany Street; Hudson View East | Yes |
| 25 | Criollo, Nancy | 07cv4462 | No | PAL Environmental Safety | Cleaner | 1 Liberty Plaza | Yes |
| 26 | Dota, Clara | 07cv1602 | No | Asbestos Lead and Hazardous Materials Laborers | Asbestos handler | Post Office; Equitable Building | Yes |
| 27 | Drake, Jesse | 07cv5353 | No | Nastasi Eurotech | Carpenter | | Yes |
| 28 | Drozdz, Stanislaw | 06cv14620 | No | Pinnacle, Trade Winds, Trio Asbestos | Asbestos handler | 101 Barclay Street; 111 Wall Street; 140 Broadway; 70 Pine Street; Gillespi Building; Hudson View East; Parc Place; Stuyvesant High School | Yes |

21 MC 102
In Re: World Trade Center Lower Manhattan Disaster Site Litigation

Summary of Information from Short Form "Check Off" Complaints"

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| No. | Plaintiff | Docket No. | Alleges Work for Tully or Named Sub-Contractors | Work for Non-"Tully" Companies | Job Title | Work Sites Other than "WTC Site" as Defined in CMO 3 | Alleges Work at DB Building other than from 1/8/02 to 7/1/02 |
| 29 | Duarte, Inerva | 07cv1603 | No | Safeway Construction, Inc. and Safeway Environmental Corp. | None | | Yes |
| 30 | Dutan, Elvia | 07cv1606 | No | Pinnacle Environment | Office cleaner/ handler | Post Office | Yes |
| 31 | Encalada, Jorge | 07cv1607 | No | PAL Environmental Safety and Pinnacle Environmental Safety | Handler | | Yes |
| 32 | Franco, Luis | 07cv4466 | No | PAL Environmental Safety | Handler | | Not Provided |
| 33 | Frelas, Janina | 07cv1612 | No | ETS Contracting, Inc. and Safeway Environmental Corp. | Asbestos handler and handler | 233 Broadway | Yes |
| 34 | Gallardo, Norbeto | 07cv5290 | No | Pinnacle Environmental Corp. | Handler | | No |
| 35 | Garcia, Viviana | 07cv1617 | No | Comprehensive Environmental | Asbestos handler | Jacob K. Javits Federal Building | Yes |
| 36 | Gaspar, Peter | 05cv10739 | No | ETS Contracting, PAL, Pinnacle | Supervisor and asbestos | Post Office | Yes |
| 37 | Gawin, Leonard | 07cv1619 | No | PAL Environmental Safety, Safeway Environmental Corp., and Trade Winds Environmental Restoration | Asbestos handler | 101 Barclay Street; 170 Broadway; 76 Varick Street; 95 Maiden Lane | Yes |
| 38 | Giamo, Samuel T. | 06cv11676 | No | FDNY | Firefighter | | Yes |
| 39 | Giraldo, Hitien E. | 07cv5554 | No | PAL Environmental Safety | Handler | | Yes |
| 40 | Gualpa, Rosa | 07cv4472 | No | Pinnacle Environmental Corp. | Asbestos cleaning | 170 Broadway | Yes |

3/8

21 MC 102
In Re: World Trade Center Lower Manhattan Disaster Site Litigation

Summary of Information from Short Form "Check Off" Complaints"

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| No. | Plaintiff | Docket No. | Alleges Work for Tully or Named Sub-Contractors | Work for Non-"Tully" Companies | Job Title | Work Sites Other than "WTC Site" as Defined in CMO 3 | Alleges Work at DB Building other than from 1/8/02 to 7/1/02 |
| 41 | Guzman, Armando | 07cv5556 | No | Branch | Asbestos worker | | Yes |
| 42 | Hernando, Nidia | 07cv4473 | No | Pinnacle Environment | Handler asbestos | | Yes |
| 43 | Hurtado, Julio | 07cv5295 | No | Kiss Construction, Inc., LBI-ABAS, Local 78, PAL Environmental Safety, Pinnacle Environmental Corp. | Not Provided | 63 Wall Street; 90 Chambers Street; P.S. 234 Independence School; West Street Building | Yes |
| 44 | Idrovo, Manuel | 07cv1628 | No | Local 78 | Cleaner | Post Office | Yes |
| 45 | Idrovo, Edgar | 07cv1627 | No | Pinnacle Environment | Asbestos cleaner | | Yes |
| 46 | Inga, Jorge | 07cv1629 | No | LVI Environmental Services, Inc. | Handler | Post Office; West Street Building | Yes |
| 47 | Jablonski, Jozef | 07cv1630 | No | PAL Environmental Safety and Trade Winds Environmenal Restoration | Asbestos handler | Post Office | Yes |
| 48 | Jaramillo, Jonas | 06cv14746 | No | Branch, PAL Environmental Safety, Pinnacle Environmental Corp. Trade Winds Environmental Rest. | Asbestos handler | 100 Church Street | Yes |
| 49 | Karus, Marian | 07cv1635 | No | LVI Environmental Services, Inc., PAL Environmental Safety, and Pinnacle Environmental Corp. | Asbestos handler and handler | P.S. 89 | Yes |
| 50 | Kosowski, Edward | 07cv5299 | No | PAL Environmental Safety, and Trade Winds Environmenal Rest. | Asbestos handler | 100 Church Street; 101 Barclay Street; 160 Water Street; 1 Liberty Plaza; Post Office; P.S. 234 Independence School | Yes |
| 51 | Lascano, Ana | 05cv9333 | No | PAL Environmental | Cleaner | 150 Broadway; 1 Liberty Plaza; Post Office | Yes |

21 MC 102
In Re: World Trade Center Lower Manhattan Disaster Site Litigation

Summary of Information from Short Form "Check Off" Complaints"

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| No. | Plaintiff | Docket No. | Alleges Work for Tully or Named Sub-Contractors | Work for Non-"Tully" Companies | Job Title | Work Sites Other than "WTC Site" as Defined in CMO 3 | Alleges Work at DB Building other than from 1/8/02 to 7/1/02 |
| 52 | Lasica, Andrzej | 07cv4480 | No | PAL Environmental Safety, Pinnacle Environmental Corp. | Asbestos handler | High School of Economics & Finance; Hudson View East; Sytuvesant High School | Yes |
| 53 | Lenis, Carlos | 06cv10045 | No | CES | Supervisor | | Yes |
| 54 | Leon, Ines | 07cv4481 | No | PAR Environmental Corp., and Pinnacle Environmental Corp. | Not Provided | 90 Trinity Place; High School of Economics & Finance; Post Office; P.S. 234 Independence School | No |
| 55 | Leon, Cesar | 07cv63 | No | Safeway Environmental Corp. | Handler | | Yes |
| 56 | Loja, Wilmo | 07cv4482 | No | Pinnacle Environment | Handler | | Yes |
| 57 | Lucero, Fernando | 07cv5366 | No | Pinnacle Environmenal Corp. | Handler | 55 Water Street; Post Office | Yes |
| 58 | Medina, Rosa | 07cv4491 | No | TBP | To be supplied | Post Office | Yes |
| 59 | Melendez, Maria | 07cv5397 | No | PAL Environmental Safety | Handler | | Yes |
| 60 | Mendez, Juan | 07cv1664 | No | Local 78 | Asbestos handler | One Liberty Plaza | Yes |
| 61 | Merchan, Carlos | 07cv1665 | No | Pinnacle Environment Corp. | Asbestos handler | | Yes |
| 62 | Mora, Eugenio | 06cv13168 | No | PAL Environmental Safety | Cleaner | 100 Church Street; Post Office; Stuyvesant High School | Yes |
| 63 | Morales, Tatiana | 07cv5370 | No | Pinnacle Environment Corp. | Asbestos handler | Post Office | Yes |
| 64 | Moreno, Sandra | 07cv1670 | No | LVI Environmental Services, Inc. and Trio Asbestos | Not Provided | | Yes |
| 65 | Naranjo, Luis | 05cv10738 | No | Local 78, LVI Environmental Services, Inc., PAL Environmental Safety, Pinnacle Environmental | Cleaner and asbestos cleaner/ asbestos handler | Hudson View East; 1 Liberty Plaza; Post Office; Stuyvesant High School | Yes |

21 MC 102
In Re: World Trade Center Lower Manhattan Disaster Site Litigation

Summary of Information from Short Form "Check Off" Complaints"

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| No. | Plaintiff | Docket No. | Alleges Work for Tully or Named Sub-Contractors | Work for Non-"Tully" Companies | Job Title | Work Sites Other than "WTC Site" as Defined in CMO 3 | Alleges Work at DB Building other than from 1/8/02 to 7/1/02 |
| 66 | Naranjo, Walter | 07cv4496 | No | Pinnacle Environment | Cleaner | 25 Broadway; 90 Trinity Place; High School of Economics and Finance; Hudson View East; P.S. 234 Independence School; Stuyvesant High School | Yes |
| 67 | Negrete, Oscar | 07cv5371 | No | PAL Environmental Safety | Handler | 233 Broadway | Yes |
| 68 | O'Connell, Sean | 07cv5374 | No | Volunteer | Volunteer | | To be provided |
| 69 | Palaguachi, Rosa | 07cv1680 | No | Branch | Asbestos cleaner | | Yes |
| 70 | Reynolds, David | 07cv3446 | No | Nastasi Eurotech | Carpenter | 10 Liberty Street; American Stock Exchange; West Street Building | Yes |
| 71 | Rhoden, Marcel | 07cv5311 | No | Site Safety, LLC | Safety manager | | Yes |
| 72 | Riera, Maximo | 07cv1519 | No | Comprehensive Environmental | Handler | | Yes |
| 73 | Rodas, Patricio | 07cv1694 | No | Pinnacle Environmental Corp. | Handler | Post Office | Yes |
| 74 | Rojas, Jaime | 07cv4511 | No | Pinnacle Environmental Corp. | Asbestos handler | 100 Church Street; Millenium Hilton Hotel; Post Office | Yes |
| 75 | Romaniuk, Mieczyslaw | 07cv5316 | No | LVI Environmental Services, Inc., PAL Environmental Safety, Pinnacle Environmental Corp., Safeway | Asbestos handler | 1 Federal Plaza; 1 Wall Street; 100 Church Street; High School of Economics and Finance; Hudson View East | Yes |
| 76 | Salazar, Victor | 07cv4512 | No | Pinnacle Environmental Corp. | Handler | Hudson View East | Yes |
| 77 | Sanchez, Rosa | 06cv12488 | No | TBP | TBP | | Yes |
| 78 | Sanchez, Edilberto | 07cv5384 | No | PAL Environmental Safety | Asbestos handler | | Yes |

6/8

21 MC 102
In Re: World Trade Center Lower Manhattan Disaster Site Litigation

Summary of Information from Short Form "Check Off" Complaints"

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| No. | Plaintiff | Docket No. | Alleges Work for Tully or Named Sub-Contractors | Work for Non-"Tully" Companies | Job Title | Work Sites Other than "WTC Site" as Defined in CMO 3 | Alleges Work at DB Building other than from 1/8/02 to 7/1/02 |
| 79 | Santamaria, Emanuel | 07cv1528 | No | PAL Environmental Safety | Handler | | Yes |
| 80 | Sarmiento, Galo | 07cv1529 | No | PAL Environmental Safety | Handler | 20 Broad Street; 55 Water Street; West Street Building | Yes |
| 81 | Sarmiento, Edwin | 07cv4515 | No | Kiss Construction, Inc. | Asbestos handler | 160 Water Street 24 Broadway; 63 Wall Street; 90 Trinity Place; High School of Economics and Finance (100 Trinity Place); Hudson View East; 1 Liberty Plaza; Post Office; Stuyvesant High School; P.S. 234 Independence School | Yes |
| 82 | Serrano, Theresa | 05cv8937 | No | PAL Environmental Safety | Handler | | Yes |
| 83 | Siguencia, Raul | 07cv1533 | No | Pinnacle Enviromenal Corp. | Handler | | Yes |
| 84 | Suarez, Felipe | 07cv1707 | No | Pinnacle Enviromenal Corp. | Asbestos handler | | Yes |
| 85 | Sumba, Samuel | 07cv1710 | No | Pinnacle Enviromenal Corp. | Handler | 63 Wall Street; Hudson View East; Stuyvesant High School; The Equitable Building | Yes |
| 86 | Tamayo, Pedro | 07cv1538 | No | Pinnacle Enviromenal Corp. | Cleaner | 101 Barclay Street | Yes |
| 87 | Teham, Nicholas | 07cv5564 | No | Regional Scaffolding | Carpenter | | Yes |
| 88 | Tenezaca, Julia | 07cv1714 | No | Pinnacle Enviromenal Corp. | Handler | | Yes |
| 89 | Teran, Cesareo | 07cv5389 | No | Comprehensive Environmental | Handler | | Yes |
| 90 | Thorpe, Jeanne | 07cv1715 | No | PAL Environmental Safety | Asbestos handler | Trinity Church | Yes |

21 MC 102

In Re: World Trade Center Lower Manhattan Disaster Site Litigation

Summary of Information from Short Form "Check Off" Complaints"

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| No. | Plaintiff | Docket No. | Alleges Work for Tully or Named Sub-Contractors | Work for Non-"Tully" Companies | Job Title | Work Sites Other than "WTC Site" as Defined in CMO 3 | Alleges Work at DB Building other than from 1/8/02 to 7/1/02 |
| 91 | Valencia, Carlos A. | 07cv5324 | No | Maxons Restoration, Inc. | Cleaner | 100 Church Street; 100 Gateway Plaza; 101 Barclay Street; 200 Gateway Plaza; 400 Gateway Plaza | Yes |
| 92 | Vasquez, Rommel | 07cv1543 | No | PAL Environmental Safety | Handler | Stuyvesant High School | Yes |
| 93 | Vazquez, Kattia | 07cv1722 | No | PAL Environmental Safety | Asbestos handler | Post Office | Yes |
| 94 | Vega, Severo | 07cv4521 | No | PAL Environmental Safety | Handler | 1 Liberty Plaza | Yes |
| 95 | Villarroel, Segundo | 07cv1546 | No | PAL Environmental Safety | Handler | Stuyvesant High School | Yes |
| 96 | Villarruel, Kleber | 06cv13703 | No | PAL Environmental Safety | Foreman | 1 Liberty Plaza | Yes |
| 97 | Walsh, Kevin | 06cv12608 | No | Nastasi Eurotech | Carpenter | | Yes |
| 98 | Waniurski, Robert | 07cv4524 | No | LVI Environmental Services, Inc., PAL Environmental Safety, and Pinnacle Environmental Corp. | Asbestos handler | 30 Rockefeller Plaza | Yes |
| 99 | Watson, Ancil | 07cv5391 | Yes: Tulley's [sic] Construction Company | None | Laborer | | Yes |
| 100 | Wragg, Clarence | 06cv8125 | No | Trade Winds Environmental Restoration | Asbestos worker | | Yes |

8/8

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
IN RE WORLD TRADE CENTER DISASTER     :
SITE LITIGATION                                           :
----------------------------------------------------------------X

**CASE MANAGEMENT ORDER**

21 MC 100 (AKH)

05 Civ. 3090 (AKH)
04 Civ. 9003 (KMK)
04 Civ. 5338 (GBD)
04 Civ. 7217 (GBD)
05 Civ. 0631 (E.D.N.Y.)
04 Civ. 9507 (HB)
05 Civ. 1927 (AKH)
05 Civ. 1091 (AKH)
05 Civ. 1092 (AKH)
05 Civ. 1093 (AKH)

ALVIN K. HELLERSTEIN, UNITED STATES DISTRICT JUDGE:

WHEREAS, on Tuesday, May 9, 2005 at 4:00 P.M., and on July 13, 2005 at 4:00 P.M., I

held status conferences in the above matters, and counsel for both plaintiff and defendants have

submitted reports on these cases pursuant to my request at the July 13, 2005 conference, IT IS

NOW, THEREFORE ORDERED THAT:

**MASTER DOCKET**

1. Cases brought by plaintiffs arising out of or relating to the September 11, 2001 attack on

   the World Trade Center were consolidated before this Court for pre-trial purposes

   pursuant to this Court's Order of November 1, 2002.

2. These cases were thereafter divided into three groups: Cases alleging wrongful death and

   personal injury based primarily on circumstances and conduct up to and including the

   attacks of September 11, 2001 were assigned the master docket number 21 MC 97; cases

   alleging property damage primarily based on circumstances and conduct up to and

1

including the attacks of September 11, 2001 were assigned the master docket number 21

MC 101 by order of March 14, 2005; cases brought by plaintiffs – such as recovery and

clean-up personnel – alleging wrongful death or personal injury primarily based on

circumstances and conduct in the period after the September 11, 2001 attacks were

assigned the master docket number 21 MC 100 by order of February 11, 2003.

3. Cases brought by plaintiffs – such as clean-up personnel – alleging personal injury

primarily based on circumstances and conduct in the period after the September 11, 2001

attacks, and based on conduct that occurred outside the area defined as the World Trade

Center Site in Case Management Order 3 of the 21 MC 100 case now constitute a fourth

group. A master docket for this fourth group is hereby established: "In re World Trade

Center Lower Manhattan Disaster Site Litigation." 21 MC ___ (AKH).

4. These cases are coordinated before me because the claims for respiratory injury share

several issues of fact and law with 21 MC 100 and the other World Trade Center cases,

and because the defendants state that they anticipate the assertion of contribution,

indemnification, and similar claims by the current defendants in the off-WTC site actions

against the defendants in 21 MC 100. The cases will not be coordinated directly as part

of 21 MC 100, however, because of plaintiff's desire to have issues of fact and law

unique to these cases supervised on a separate basis. The cases listed above are hereby

coordinated, and the approximately 300 cases the plaintiffs represent will be brought

shall be coordinated as related to this action.

5. The Clerk of the Court is hereby ordered to list the cases named on Exhibit A of this

order as related to 21 MC ___ (AKH).

6. Counsel shall file originals of papers that relate to all of the cases under 21 MC ___ in

accordance with the electronic filing procedures established for 21 MC 100 as defined in Case Management Order XX of March XX, 2005.

7. The Court designates Gregory Cannata, Esq. of The Law firm of Gregory J. Cannata, 233 Broadwa, 5th Floor, New York, New York 10279-0003, to serve as liaison counsel for the plaintiffs in this case. The Court designates as defendants Co-Liaison Counsel James E. Tyrrell, Jr., Esq. of Latham & Watkins LLP, One Newark Center, 16th Floor, Newark, NJ 07102, and Richard A. Williamson, Esq. of Flemming, Zulack & Williamson, LLP, One Liberty Plaza, 35th Floor, New York, NY 10006 (hereinafter referred to jointly as "Defendants' Liaison Counsel"). The Court directs the parties to coordinate their actions through Liaison Counsel. Nothing herein shall restrict the substantive rights of any party, including the right to be represented by separate counsel or to take separate positions from other parties. The Court reserves the right to designate liaison counsel for either plaintiffs or defendants as a replacement for the designations by the parties if the need should arise.

8. Appointment of Liaison Counsel and Steering Committee Counsel to act as set forth below will facilitate communications among the Court and counsel, minimize duplication of effort, foster the coordination of joint positions, and provide for the efficient progress and control of this litigation. Liaison Counsel are vested by the Court with the following responsibilities and duties:

   a. prepare and maintain an official service list of plaintiffs' and defendants' counsel in the cases subject to this Order including the persons or companies they represent, upon whom papers shall be served in this litigation;

   b. receive orders, notices, correspondence and telephone calls from the Court and

3

the Clerk of the Court on matters of general applicability on behalf of all plaintiffs
or defendants, as the case may be, and to notify such other plaintiffs' or
defendants' counsel of communications received from the Court; and

   c.  perform such other administrative tasks as may be necessitated by this or future
CMOs, by the agreement of the parties, or by order of the Court;

   d.  maintain and distribute to co-counsel and to the opposing Liaison Counsel an up-
to-date service list;

   e.  coordinate with opposing Liaison Counsel and with the Court on scheduling
issues;

   f.  be responsible for the service and filing of joint pleadings and communications
with the Court to the extent practicable;

   g.  receive and, as appropriate, distribute to co-counsel orders from the Court and
documents from opposing parties and counsel;

Except as may be expressly otherwise provided in this or future CMOs, all
pleadings, motions and other papers served in these cases shall be served on plaintiffs'
and defendants' counsel for all of the parties in the case(s) to which such papers apply.
**Service on a Liaison Counsel shall <u>not</u> suffice as service on any other party.**

9.  The parties shall appear for a status conference on September 22, 2005 at 3:00 P.M. in
Courtroom 14D, 500 Pearl St., New York, New York 10007.

        SO ORDERED.

Dated:    New York, New York
           August 9, 2005

                                    ALVIN K. HELLERSTEIN
                                    United States District Judge

EX. A

| Case Name | Docket Number |
|---|---|
| Racioppi v. Tully Construction Co., et al. | 04 CV 9003 (AKH) |
| Arsenault v. Tully Construction Co. Inc., et al. | 04 CV 5338 (SDNY, Judge Daniels) |
| Thomas v. The City of New York | 04 CV 7217 (SDNY, Judge Daniels) |
| Thompson v. The City of New York | 05 CV 0631 (EDNY, Judge Glasser) |
| Diversified Carting, Inc. v. The City of New York, et al. | 05 CV 9507 (SDNY, Judge Baer) |
| Markut v. Sakele Brothers L.L.C., et al. | 05 CV 1927 (AKH) |
| Foremska v. The Bank of New York Company, et al. | 05 CV 3090 (AKH) |
| Sanchez v. Logany LLC, et al. | 05 CV 1091 (AKH) |
| Valdez v. Logany LLC, et al. | 05 CV 1092 (AKH) |
| Checo v. Logany LLC, et al. | 05 CV 1093 (AKH) |

NY\106120.2

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x
IN RE WORLD TRADE CENTER DISASTER   :     21 MC 100 (AKH)
SITE LITIGATION                          :
                                                :
--------------------------------------------------------------- x
IN RE WORLD TRADE CENTER LOWER    :     21 MC 102 (AKH)
MANHATTAN DISASTER SITE LITIGATION   :
                                                :
--------------------------------------------------------------- x
IN RE COMBINED WORLD TRADE CENTER   :     21 MC 103 (AKH)
AND LOWER MANHATTAN DISASTER SITE    :
LITIGATION (straddler plaintiffs)              :
                                                :
--------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

## Case Management Order No. 1,  21 MC 103

           In the aftermath of the attacks on the World Trade Center on September 11, 2001,

many workers came to World Trade Center site and nearby locations to assist with debris

removal and other tasks.  Some of these workers suffered respiratory and other injuries, and have

filed lawsuits.  Those who worked at the World Trade Center site filed suit against the City of

New York and other contractors; their cases are consolidated as master docket 21 MC 100.  See

Case Management Order No. 2, 21 MC 100 (Feb. 7, 2005).  Those who worked at sites other

than the World Trade Center site filed suit against the building owners and others; their cases are

consolidated as master docket 21 MC 102.  See Case Management Order, 21 MC 100 (Aug. 9,

2005).

           The Court has learned that a substantial number of plaintiffs—190 at last count—

performed work at the World Trade Center site and at other sites.  These plaintiffs have become

known as "straddler" plaintiffs because their allegations span master dockets 21 MC 100 and 21

MC 102.  Their status as "straddlers" raised issues for plaintiffs' liaison counsel, for the Clerk's

office, and for me. Plaintiffs' liaison counsel lacked a check-off complaint that adequately reflected all the allegations needed to be made by these "straddler" plaintiffs, and commenced to file multiple complaints for the same individual. The Clerk's office did not docket multiple complaints for a single plaintiff, and the splitting of a cause of action into two parts, where the injury of which plaintiffs complain is indivisible as among the various "on-site" and "off-site" defendants named in 21 MC 100 and 21 MC 102, would confuse the proceedings and create a danger of duplicate recoveries.

Following the status conference of 21 MC 102 cases on March 20, 2007, I asked the parties to propose an order that would organize the filing of these "straddler" complaints. On March 26, 2007, the parties submitted a stipulated order, proposing to split the cause of action into two parts, one that would proceed, by separate complaint, within the 21 MC 100 master docket, and one that would proceed, by another complaint, within the 21 MC 102 master docket. Having considered this proposal with the Clerk, and in light of my concerns previously expressed, I decline to order the stipulation. Instead, I order as follows:

1. The Clerk shall maintain a separate master docket and case file under the heading In re Combined World Trade Center and Lower Manhattan Disaster Site Litigation (straddler plaintiffs), 21 MC 103 (AKH). Orders, pleadings, motions, and other documents bearing the caption of this Order shall, when docketed and filed in the Master File, be deemed docketed and filed in each individual case subject to this Order to the extent applicable, and ordinarily will not be docketed separately or physically filed in such individual case.

2. Plaintiffs' liaison counsel will create a "straddler" check-off complaint to comprehend all their claims for relief.

-2-

3. The "straddler" check-off complaints shall incorporate the master complaints in 21 MC 100 and 21 MC 102, and provide each plaintiff with check-boxes to identify his claims against particular defendants of those named therein. The "straddler" check-off complaint shall not include allegations other than those made in the 21 MC 100 and 21 MC 102 master complaints and check-off complaints.

4. Plaintiff shall file the "straddler" check-off complaint in 21 MC 103 as an amended complaint, and dismiss all other complaints, by June 1, 2007.

5. Those aspects of the check-off complaint that allege injuries caused by the City of New York and other defendants, arising from, or relating to, activities at the World Trade Center sites (as defined in Case Management Order No. 3, 21 MC 100), shall be coordinated with cases collected in 21 MC 100.

6. Those aspects of the check-off complaint that allege injuries arising from, or relating to, activities at sites other than the World Trade Center sites (as defined in Case Management Order No. 3, 21 MC 100), shall be coordinated with cases collected in 21 MC 102.

7. A document that relates to all "straddler" cases shall bear a caption as follows:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
IN RE COMBINED WORLD TRADE CENTER    :    21 MC 103 (AKH)
AND LOWER MANHATTAN DISASTER SITE    :
LITIGATION (straddler plaintiffs)    :    (all cases)
---------------------------------------------------------------- x

The Court recognizes that a document that relates to all cases in the 21 MC 100 or 21 MC 102 dockets will, by definition, also relate to the 21 MC 103 docket. Such documents shall bear dual captions, as at the top of this Order.

-3-

8.  A document that relates to one or more specific cases, but not to all cases, shall bear a

caption as follows:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
IN RE COMBINED WORLD TRADE CENTER      :        21 MC 103 (AKH)
AND LOWER MANHATTAN DISASTER SITE      :
LITIGATION (straddler plaintiffs)
------------------------------------------------------------- x
JOHN DOE,                                                :
                                                        :        TITLE
                                Plaintiff,               :
        -against-                                        :        Civil Action Number(s) (AKH)
                                                        :
DEFENDANTS,                                              :
                                                        :
                                Defendants.              :
------------------------------------------------------------- x

9.  Plaintiffs' claims arising from, or relating to, activities at the World Trade Center sites (as

defined in Case Management Order No. 3, 21 MC 100) shall be stayed until such time as

the United States Court of Appeals for the Second Circuit rules on Defendants' appeal in

21 MC 100.

10. Plaintiffs' claims arising from, or relating to, activities at sites other than the World Trade

Center sites (as defined in Case Management Order No. 3, 21 MC 100) shall proceed in

coordination with all other claims classified as related to 21 MC 102.

11. The law firm of Worby, Groner, Napoli, & Bern shall provide to the Clerk a list of cases

by April 20, 2007, including the index number, date filed, and plaintiff's name, that

should be classified as related to the 21 MC 103 docket.

12. The Clerk shall remove each case on the list provided by Worby, Groner, Napoli, & Bern

from the 21 MC 100 and 21 MC 102 master dockets, and classify the case as related to

the 21 MC 103 master docket.

13. Plaintiffs and Defendants shall submit a proposed order or orders appointing liaison

    counsel to represent plaintiffs and defendants with cases classified as related to the 21

    MC 103 master docket, by April 20, 2007. If multiple proposals are received, the Court

    shall appoint liaison counsel from among the proposals.

      SO ORDERED.

Date:      March 28, 2007
           New York, New York

                                  ALVIN K. HELLERSTEIN
                                 United States District Judge

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                   :
IN RE WORLD TRADE CENTER          :        **CASE MANAGEMENT ORDER NO. 3**
LOWER MANHATTAN DISASTER          :
SITE LITIGATION                   :        21 MC 102 (AKH)
                                                   :
------------------------------------------------------X
ALVIN K. HELLERSTEIN, U.S.D.J.:

        To promote efficiency in this consolidated litigation of over 600 cases, the parties

developed master complaints and accompanying check-off complaints. On March 20, 2007, I

held a status conference to address certain issues raised by the parties in relation to these

complaints. This Order re-states and clarifies the rulings I made at the status conference.

1. By consent of the parties, a plaintiff shall plead causes of action under New York Labor Law

    §§ 200 and 241(6) separately.

2. The check-off complaint shall not include a cause of action under New York Labor Law

    §§ 205-a and 205-e. Plaintiffs' liaison counsel represented that no plaintiff exists at this time

    that could assert such causes of action; therefore, the cause of action is unnecessary.

3. A plaintiff may not attach riders to the check-off complaint asserting additional causes of

    action or other allegations not covered by the master complaint. A plaintiff whose

    circumstances cannot be described by the master complaint and check-off complaint should

    seek consent to file an amended master complaint and check-off complaint from Defendants'

    liaison counsel and, if consent is not obtained, such plaintiff should file a motion for leave to

    amend the complaints.

4. A plaintiff should provide, to the extent he is able, the specific location worked, including the

    floor or floors of specific buildings, and the other items provided in the check-off complaints

    discussed at the status conference on March 20, 2007.

5.  Plaintiffs shall file and serve their master and check-off complaints by June 1, 2007.

6.  The parties shall appear, through liaison counsel, for a status conference on June 15, 2007 at

    1pm.


          SO ORDERED.

Dated:       March 21, 2007
             New York, New York

                                   _____
                                   ALVIN K. HELLERSTEIN
                                   United States District Judge

2

# EXHIBIT F

```
                              76FVWORC.TXT
                                                                    1
        76FVWORC              Conference
    1   UNITED STATES DISTRICT COURT
    1   SOUTHERN DISTRICT OF NEW YORK
    2   ----------------------------X
    2
    3   IN RE:  WORLD TRADE CENTER
    3
    4   LOWER MANHATTAN DISASTER              21 MC 102 (AKH)
    4
    5   SITE LITIGATION
    5
    6   ----------------------------X
    6                                         New York, N.Y.
    7                                         June 15, 2007
    7                                         1:05 p.m.
    8
    8   Before:
    9
    9                    HON. ALVIN K. HELLERSTEIN,
   10
   10                                         District Judge
   11
   11                         APPEARANCES
   12
   12   WORBY GRONER EDELMAN & NAPOLI BERN LLP
   13        Attorneys for Plaintiffs
   13   BY:  WILLIAM H. GRONER
   14        MARC J. BERN
   14        WILLIAM J. DUBANEVICH
   15             -AND-
   15   GREGORY J. CANNATA & ASSOCIATES
   16   BY:  GREGORY J. CANNATA
   16             -AND-
   17   ROBERT A. GROCHOW PC
   17   BY:  ROBERT A. GROCHOW
   18
   19
   20
   21
   22
   23
   24
   25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
                                                                    2
        76FVWORC              Conference
    1                    APPEARANCES (cont'd.)
    2   PATTON BOGGS LLP
    2        Attorneys for Defendant City of New York
    3   BY:  JAMES E. TYRRELL, JR.
    3        JOSEPH E. HOPKINS
    4
    4   FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
    5        Attorneys for Defendant Silverstein Properties, Inc.
    5   BY:  THOMAS A. EGAN
    6
    6   KIRKLAND & ELLIS LLP
    7        Attorneys for Defendant Verizon New York
    7   BY:  LEE ANN STEVENSON
    8
    8   STERN TANNENBAUM & BELL LLP
                              Page 1
```

76FVWORC.TXT
3    worked out, Napoli Bern firm needs to perform a check-off
4    complaint which is commensurate with the one that was finalized
5    by liaison counsel for plaintiffs in the 102 docket.
6         MR. CANNATA:  Your Honor, part of the difficulty that
7    we have is that the Court's order required the complaints to
8    be filed before they were finalized.  And that was part of the
9    difficulty.
10        However, I understand that there are no firemen and
11   policemen plaintiffs in this docket.  And if you recall the
12   last conference, we addressed this issue and you ordered that
13   the 205(e) claims should be taken out.  And that's what we did.
14   And as far as I know, there aren't any --
15        THE COURT:  So if they are still in, I guess they'll
16   be fixed up.
17        MR. CANNATA:  It's not a problem, Judge.  There are no
18   plaintiffs that are claiming that basis for a suit.
19        THE COURT:  Mr. Hopkins.  Again, I don't have a basis
20   to resolve that.  There's a substantive point here.  The point
21   is that a fireman and a policeman are not allowed to sue the
22   City, I guess, for damages where they can recover the analog to
23   workmen's compensation.  That's the point, isn't it?
24        MR. CANNATA:  No, Judge, that's incorrect.
25        THE COURT:  Incorrect.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              14
76FVWORC            Conference
1         MR. CANNATA:  You're incorrect by that.  A fireman and
2    policeman can sue the City, but they have to allege a specific
3    violation of law, a rule.  But as far as I know, there are no
4    plaintiffs -- they do have some.  I'm being told they do have a
5    couple.  So, Judge, they have to straighten that out.
6         THE COURT:  What's the situation?
7         MR. DUBANEVICH:  Your Honor, William J. Dubanevich.
8    We do have firefighters and police officers who are in the 102
9    classification.  And that is why we had to allege violations of
10   the General Municipal Law.
11        THE COURT:  So what do you want me to do, Mr. Hopkins?
12        MR. HOPKINS:  Well, after all the Sturm und Drang that
13   we've had to get to this point to try to finalize pleadings, we
14   now have master complaint filed which does not include
15   allegations regarding General Municipal Law.
16        We have check-off complaints from Cannata and Grochow
17   that don't make reference to that because it's not there.  But
18   now, and really, I think, for the first time we're hearing from
19   the Napoli Worby Groner firm that they do have allegations to
20   make under those provisions, and they are not in the master
21   complaint.  So their check-off complaint refers back to the
22   master complaint that doesn't contain those types of claims.
23        THE COURT:  So the first assertion of the claim is the
24   check-off complaint, and presumably you're going to move to
25   dismiss them because of the issue of limitations.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              15
76FVWORC            Conference
1         MR. HOPKINS:  Undoubtedly.  And I'm sure other
2    substantive reasons, as well.
3         THE COURT:  Like what?  Just to give me a heads-up.
4         MR. HOPKINS:  I've not looked at the check-off
5    complaints, so I can't speak to whatever the clients are.  But
6    as to whether that is a proper vehicle for whoever these
7    people -- these plaintiffs may be; whether they can rely upon
                        Page 7

76FVWORC.TXT
8   this provision in the General Municipal Law to make such a
9   claim or not.  It goes beyond any type of statute-type issue.
10          THE COURT:  I'm not familiar with the law.  I don't
11  know what it is.  But I'll take the statement from Mr. Cannata
12  as expressing the law that if the City has violated a law that
13  firemen and policemen can sue.  You know, all this makes my
14  head kind of swim.  And I guess it begs the definition of
15  what's involved in the 102 and later the 103 cases.
16          Forgetting about the technical definition of the World
17  Trade Center, the way I looked at this is that 100 were the
18  cases that were focused mainly against the City, because the
19  Department of Design and Construction took the lead in the
20  cleanup of the World Trade Center.
21          102 were cases where there were private or public
22  homeowners independent of the Department of Design and
23  Correction, to the Department of Design and Construction.
24          And 103 is where plaintiffs did some work under the
25  jurisdiction of the DDC and other work under the jurisdiction
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                              16

76FVWORC                    Conference
1   of private and public property owners.  That's how I looked at
2   it.  I don't know if that's realistic or not.
3           MR. CANNATA:  Your Honor, that's our position, as the
4   Court just expressed.  However, when you issued the order for
5   103, we believe you made an error, and you went to the earlier
6   definition, the 100 definition, of what the World Trade Center
7   site was.
8           THE COURT:  I did?
9           MR. CANNATA:  You inadvertently did that.  And you did
10  that --
11          THE COURT:  It was the only definition that was at
12  hand.  Let me just tell you this:  I thought, and let me expose
13  my thinking so that if it's wrong, I want to know it's wrong.
14          I thought that DDC was in control of the cleanup
15  operations with regard to all the property identified in that
16  first order.  And I think I took that definition from the
17  Victims Compensation Fund.  I don't remember exactly where I
18  took it from, but I think I took it from there.  And that may
19  be the cause of the problem, I don't know.  And I don't know
20  what is feasible here.
21          MR. CANNATA:  Well, the practical effect of it is,
22  Judge, that by using the definition from 100 that you used that
23  was made before 102 was created, you've essentially put almost
24  all of the plaintiffs from 102 back into the 100 case and thus,
25  the 103 case.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                              17

76FVWORC                    Conference
1           THE COURT:  I didn't intend that.
2           MR. CANNATA:  I know you didn't intend it, Judge.  But
3   I'm just telling you, for example, with our cases, I have our
4   45 or so plaintiffs, we would end up with about 35 of them into
5   103, and only a handful, eight or nine or ten, in 102.  And I
6   don't think that's what the Court intended.
7           THE COURT:  No, it's not what I intended.  I also
8   raised the issue of the lead counsel issues with regard to 102
9   and 103.  Because it was my conception that the 102 case had
10  involved lawsuits against others in the City through DDC.  And
11  therefore, I thought it not particularly appropriate that the
12  same plaintiffs' lawyers are the same defendants' lawyers be
                             Page 8

76FVWORC.TXT
```
13   functioning on 102.  And I've never really resolved that issue.
14          Mr. Tyrrell.
15          MR. TYRRELL:  Your Honor, I'd like to jump an issue
16   back, as we've moved ahead to the issue of whether there should
17   be broader representation at the level of the liaison, not
18   lead, but liaison counsel.  I'd like to speak to that later,
19   but I'd like to respond to Mr. Cannata's point.
20          We have been operating for more than two years now
21   with a particular definition that was born in the 100 docket
22   that your Honor created as to what was the geographic area, the
23   16 acres covered by that docket.  But it is not true when you
24   created 102, you'll remember we objected to it at that time, we
25   said, Don't bother breaking them up; keep them altogether.
```
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                             18
         76FVWORC               Conference
```
1    We're over that.  But when you created 102, you took the
2    reciprocal of that definition; you said other things --
3           THE COURT:  That's right.
4           MR. TYRRELL:  -- in that 16 acres.
5           THE COURT:  That's right.
6           MR. TYRRELL:  Now, that made great sense.  Because
7    whether the claim occurred in lower Manhattan or occurred, as
8    Mr. Cannata says, here in this courthouse, and frankly, I think
9    the only one in this courthouse who possibly got sick is your
10   Honor for working too hard on the case.  But that's a different
11   kind of claim.
12          THE COURT:  I need a remedy.
13          (Laughter)
14          MR. TYRRELL:  You need a remedy.  I think it's more
15   than over-the-counter, your Honor.  If we go back now and
16   change, so I'm now focused exactly on that issue --
17          THE COURT:  My wife said retire.  I said the case will
18   follow me.
19          (Laughter)
20          MR. TYRRELL:  If we go there now, okay, we're going to
21   ditch all of the definitions and organizational stuff that we
22   had.  But then when you look at what Mr. Cannata proposes in
23   his letter, which is something that is supposed to be better,
24   and of course, you said nobody's substantive rights is going to
25   be affected by this.  This is just to help get it organized.
```
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                             19
         76FVWORC               Conference
```
1           His definition will turn on whether the City of New
2    York is a defendant in each case.  That makes no sense
3    whatsoever.
4           So in his definition, someone who worked on the pile
5    and sued only Tully, it would no longer be a 100 case, because
6    the City of New York would have to be in it, according to his
7    proposed --
8           THE COURT:  If someone worked on the pile and worked
9    for Tully --
10          MR. TYRRELL:  And didn't sue New York, too, it
11   wouldn't any longer be a 100 case.
12          THE COURT:  Well, who would he sue?
13          MR. TYRRELL:  I don't know.  It's amiss.
14          MR. CANNATA:  I didn't say that, Judge.
15          MR. TYRRELL:  We don't need to change this.
16          MR. CANNATA:  Judge, excuse me.  I didn't say that in
17   my letter.  I said outside on the mound.
```
                         Page 9

76FVWORC.TXT
18          THE COURT:  Stop.  Stop.  What's the justification of
19   having a different collection of cases in 102 from what I have
20   in 100?  I'll answer it.  It's because it's a different
21   defendant.
22          The City, except as an owner of property, is not
23   involved.  The violations alleged of the labor law were by the
24   managers and owners of the specific properties.  I mean, folks,
25   that's what I had in mind.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    20
     76FVWORC                  Conference
1           MR. TYRRELL:  And your Honor, at this point we're not
2    suggesting we change that.
3           THE COURT:  The definition.
4           MR. TYRRELL:  It is Mr. Cannata who is suggesting --
5           THE COURT:  My definition.
6           MR. TYRRELL:  -- that your definition be changed.  So
7    now if someone worked, and let's take the Deutsche Bank
8    building as an example.  It was under the control, we believe,
9    of the DBS for the cleanup.  It was completely -- it wasn't not
10   banned, it was destroyed.
11          THE COURT:  DBS?
12          MR. TYRRELL:  I'm sorry, Department of Design and
13   Construction.
14          THE COURT:  I don't think sanitation was involved.
15          MR. TYRRELL:  Right.  Now, that building was never
16   reoccupied, okay.  So as to that building, if you now took his
17   definition and transferred that out because it was originally a
18   private building, we would be creating yet more confusion.
19          THE COURT:  I think DDC was involved with Deutsche
20   Bank.
21          MR. TYRRELL:  That's why it should stay in 100.
22          THE COURT:  That's why Verizon is in 100 also.
23          MR. TYRRELL:  And you've already ruled on those
24   applications as to Verizon, and I know Verizon's counsel wants
25   to speak to that.  But if you followed Mr. Cannata's suggestion
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    21
     76FVWORC                  Conference
1    now, all of the Verizon cases and the Verizon building would
2    move to the 102 docket.
3           THE COURT:  I've taken the position throughout that
4    substantive rights should not be affected by how I categorize
5    the case.  Because I never really felt confident in my
6    definitions.  And I didn't want substantive rights to be
7    affected by it.
8           It was my impression that Deutsche Bank, which is
9    across the street from is it One or Two World Trade Center, was
10   treated like it was part of the World Trade Center in terms of
11   the cleanup operations.  But the buildings on Rector Street, to
12   draw an example, two blocks away, three blocks away, I don't
13   remember exactly, should not be in the same category as the
14   World Trade Center.
15          Now, you ask what about the buildings in between, the
16   church, for example, across the street, the other way to the
17   World Financial Center.  The World Financial Center is in the
18   definition, I see.  I don't know why.  I guess DDC functioned
19   there, so maybe that's why.
20          MR. TYRRELL:  One of the reasons is debris fell into
21   those buildings, structural debris that was the same type
22   that's being cleaned up on the ground fell over and went right
                              Page 10

76FVWORC.TXT
23  into the Deutsche Bank building.
24          THE COURT:  You know, I don't really care, except to
25  the extent that the category is driving a different result from
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                                22

76FVWORC                    Conference
1   that which we normally obtain.  And I need to be alerted to
2   that when it happens.
3           Why I challenge your leadership, Mr. Tyrrell, it's not
4   because I don't admire your leadership.  And I will tell you
5   very candidly, although we've had our differences in these
6   cases, one way that I've been able to administer the cases is
7   because of the hard work that you and Mr. Hopkins and your
8   other colleagues have put into this case.  I'm indebted to you.
9   And I have no doubt but that 102 and 103 will benefit from your
10  leadership, as well.
11          But what I'm bothered by is that as I look at these
12  cases, DDC was not involved.  And it should not be taken to
13  task for providing masks or not providing masks, or giving
14  education or not giving education.  If that's the case, why are
15  you involved?  Why do you care, except as a friend of the
16  Court.  I'm glad to have your friendship, but there's a
17  conflict issue.
18          MR. TYRRELL:  I'll tell you why I care, and then I'll
19  tell you why you shouldn't worry about it.  Okay?
20          THE COURT:  Okay.
21          MR. TYRRELL:  First, I care because according to my
22  colleagues over here, the City of New York in the 102 docket is
23  currently in 65 to 95 actions.  I am their counsel.
24          THE COURT:  As owner?
25          MR. TYRRELL:  We don't have the specific complaints
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                                23

76FVWORC                    Conference
1   yet, but we assume so, yes.  As either a tenant or an owner,
2   yes, in 65 to 95 of those actions.  And is in a whole bunch of
3   actions that will be in that status in the 103 docket, as well.
4           THE COURT:  By all means you have to be in the case,
5   but there have to be others.
6           MR. TYRRELL:  We completely agree with that, let me
7   tell you the --
8           THE COURT:  No one is stepping up.
9           MR. TYRRELL:  Well, that's the problem.  But let me
10  tell you why you don't have to be concerned about the thing you
11  put in your order, which is the issue of conflict.  Why?
12  Because when you serve as liaison counsel, the general law is
13  it isn't a conflict; your duty of loyalty still runs to your
14  client.  You have a duty to the Court and everybody else to
15  serve as liaison --
16          THE COURT:  I accept that, Mr. Tyrrell, as long as
17  there are others in the group to protect different interests.
18          MR. TYRRELL:  Couldn't agree with you more.  But one
19  last point, because I went and looked it up.  You, very
20  smartly, in the order you entered when you created liaison
21  counsel, specifically said in CMO No. 2 way back when that
22  there would be no conflicts by serving in that position.
23          So only the issue you have now addressed is the right
24  issue, which is would some other people please step up so that
25  there is a broad enough representation.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                           Page 11

# EXHIBIT G



The Legal Center
One Riverfront Plaza
6th Floor
Newark, NJ 07102
973-848-5600

973-848-5601
www.pattonboggs.com

August 1, 2007

**Via Electronic Mail**

Hon. Alvin K. Hellerstein, U.S.D.J.
United States District Court for the Southern
District of New York
500 Pearl Street, Room 910
New York, New York 10007

     Re:    *Kirk Arsenault, et al. v. Tully Construction Co., Inc., Tully Industries Inc., and*
             *Deutsche Bank*, Docket No. 04-cv-5338 (AKH)

Dear Judge Hellerstein:

     Counsel for the parties in the above-captioned action hereby submit this joint letter to request the Court's determination of the defendants' request to transfer this action from the 21 MC 102 docket to the 21 MC 100 docket.

     ***Defendants' Position:***

     Counsel for Tully Construction Co. Inc. and Tully Industries, Inc. ("Tully") respectfully requests the transfer of the above-captioned action (the "*Arsenault* action") from the 21 MC 102 docket to the 21 MC 100 docket.  Co-defendant Deutsche Bank Trust Company Americas ("Deutsche Bank") does not object to Tully's request under the circumstances presented here.

     Plaintiffs' counsel Robin Wertheimer, Esq. represents three plaintiffs in actions allegedly arising out of those plaintiffs' work allegedly related to the rescue, recovery and debris removal efforts following the collapse of the World Trade Center ("WTC") on September 11, 2001.  Those plaintiffs are Kirk Arsenault, Steven Zablocki and Richard Racioppi.  The latest version of the *Arsenault* complaint (filed October 13, 2004) (currently

44741

Hon. Alvin K. Hellerstein, U.S.D.J.
August 1, 2007
Page 2

pending in the 21 MC 102 docket) encompassed claims brought by two plaintiffs: Kirk
Arsenault and Steven Zablocki. Mr. Zablocki's claims apparently were subsequently severed
from the *Arsenault* action on December 26, 2006, when a separate individual complaint was
filed in Mr. Zablocki's name under Civil Action No. 06-cv-15494 (the *"Zablocki* action").
The *Zablocki* action thereafter was docketed in 21 MC 100. Despite the apparent severance
of Mr. Zablocki's claims from the *Arsenault* action, however, plaintiffs' counsel has not filed
any amended pleading in the *Arsenault* action to reflect such severance. Furthermore,
plaintiffs' counsel has failed to file a check-off complaint in the *Arsenault* action
(notwithstanding the Court's prior order that check-off complaints for all actions in 21 MC
102 were to be filed by June 14, 2007).[1]

Plaintiffs' counsel Ms. Wertheimer previously wrote the Court to request the transfer
of the *Zablocki* action from the 21 MC 100 docket to the 21 MC 102 docket. Defendants'
counsel were never copied on plaintiffs' counsel's communication to the Court. Responding
to plaintiffs' counsel's request, the Court ruled that the *Zablocki* action should "remain
classified as related to 21 MC 100, and remain subject to the Second Circuit's stay." (April
13, 2007 Order Denying Motion to Transfer Dockets, Docket No. 06-cv-15494, 21 MC 100
(AKH)) (the *"Zablocki* Order"). Specifically, the Court indicated that plaintiff Zablocki's
request to transfer his case from 21 MC 100 to 21 MC 102 was denied on the grounds that his
complaint alleged that he worked at the Deutsche Bank building at 130 Liberty Street which is
"considered part of the World Trade Center site, as defined in Case Management Order No. 3,
21 MC 100 (Feb. 7, 2005)."[2] The Court also denied plaintiff Zablocki's transfer request

---

[1]    The action of plaintiff Richard Racioppi, captioned *Richard Racioppi v. Tully
Construction Co., Inc., Tully Industries Inc., and Deutsche Bank*, Index No. 112407/04 (latest
complaint dated October 13, 2004), is not the subject of this joint letter as plaintiffs' counsel
has indicated that the *Racioppi* action shortly will be voluntarily dismissed or withdrawn. If
that understanding is incorrect in any way, then Tully respectfully requests, without objection
from Deutsche Bank, that the *Racioppi* action also be transferred from the 21 MC 102 docket
to the 21 MC 100 docket for the reasons set forth herein. Although the *Racioppi* action (like
the *Arsenault* action) currently is docketed in 21 MC 102, no check-off complaint has been
filed in the *Racioppi* action.

[2]    Deutsche Bank does not concede that the definition of the World Trade Center site in
CMO 3 is necessarily dispositive of Tully's request. In Deutsche Bank's view, it is the nature
of a given plaintiff's work, not just the location, that should dictate whether the case is
designated to 21 MC 100 or 21 MC 102. However, the parties need not debate that issue in
the present application because the type of work performed by Arsenault, Zablocki, and
Racioppi, on behalf of a City contractor, militates in favor of their designation to 21 MC 100.

Hon. Alvin K. Hellerstein, U.S.D.J.
August 1, 2007
Page 3

because defendant Tully is one of the contractors of the City of New York involved in the 21 MC 100 docket and is one of the contractors involved in the interlocutory appeal to the Second Circuit which resulted in a stay of all 21 MC 100 proceedings. *See Zablocki* Order.

Just like the *Zablocki* action, the *Arsenault* action belongs in the 21 MC 100 docket and should be transferred there and stayed. The allegations of plaintiff Arsenault are identical to those of plaintiff Zablocki. *Compare Kirk Arsenault et. al. v. Tully Construction Co., Tully Industries Inc., and Deutsche Bank*, Index No. 04 CV 5338 at ¶¶ 11, 14 ("*Arsenault* Complaint") *with Steve Zablocki v. Tully Construction Co., Inc., Tully Industries Inc., and Deutsche Bank*, Index No. 06-CV-15494 at ¶¶ 11, 14 ("*Zablocki* Complaint").[3] Plaintiffs' counsel has indicated that plaintiffs Arsenault and Zablocki worked side-by-side in the Deutsche Bank building.[4] Both plaintiffs[5] have brought suit against Tully and Deutsche Bank for the WTC-related work in which they allegedly were involved. *Compare Arsenault* Complaint at ¶¶ 4, 6, 40 *with Zablocki* Complaint at ¶¶ 4, 6, 45. And finally, both plaintiffs[6] Arsenault and Racioppi allege that they were employed by Manfort Brothers Inc., a sub-contractor of Tully, and worked doing debris removal and cleanup work in the Deutsche Bank building. *Compare Arsenault* Complaint at ¶ 11 *with Zablocki* Complaint at ¶ 11. Manfort Brothers, Inc. conducted this work as a subcontractor to Tully who was working as one of the City of New York's contractors in the rescue, recovery and debris removal effort.

Given the identical nature of the *Arsenault* and *Zablocki* claims and for the reasons already articulated by the Court in the *Zablocki* Order, Tully respectfully requests that the *Arsenault* action be transferred from the 21 MC 102 docket to the 21 MC 100 docket. Should the Court require that a formal motion be filed seeking this result, Tully respectfully requests the opportunity to promptly file such motion upon request of the Court. Although Tully is protected by a current stay from the Second Circuit, we respectfully request that the time to respond to the Master Complaint be extended with respect to Defendants during the pendency

---

[3]      And the allegations of plaintiff Racioppi are the same. *See, e.g., Racioppi* Complaint at ¶¶ 13, 16.

[4]      With plaintiff Racioppi. *See id.* at ¶ 16.

[5]      And Racioppi. *See id.* at ¶ 7.

[6]      And Racioppi. *See id.* at ¶ 13.

Hon. Alvin K. Hellerstein, U.S.D.J.
August 1, 2007
Page 4

of this letter request to avoid prejudice should the Court disagree with respect to the relief
requested herein.

### *Plaintiffs' Position:*

Plaintiff Kirk Arsenault objects to the proposed transfer of his case from its
present docket. The defendants' proposal is highly prejudicial and, under its own reasoning,
entirely unfounded.

Plaintiffs Arsenault and Zablocki, working side by side, were employed by Manfort
Brothers, a sub contractor of Tully, to dismantle the Deutsche Bank building at 130 Liberty
Street in the aftermath of September 11. These men were employed in the fairly unique job of
"burners" or, burning the steel of the building in such a way as to control its demolition. In the
course of this employment, they were exposed to molds and other toxins which have caused
them serious injuries. Their employ commenced on or about October 15, 2001.

In 2004, Arsenault and Zablocki brought one complaint under, *inter alia*, the labor
law. It was filed in the Southern District on diversity grounds because these men reside in
Massachusetts. As the docket illustrates, it was moved from Judge Kram, to Judge Cedarbaum
to Judge Castel, then a pretrial conference was held before Judge Casey before it went to
Judge Daniels, and it finally landed, despite plaintiffs' objections, with the World Trade
Center cases. However, were it to be designated a World Trade Center case, it was more
properly designated as an off-site case, in 21 MC 102.

The reasoning given by the defendants in this letter do not justify a reassignment of
this case to the stayed docket. These plaintiffs' type of work does not in any way "militate on
favor of their designation to the 21 MC 100 docket". The type of work that they did was not
in any way "related to debris removal and clean up work". These quotes are from the
defendants' portion of this letter in support of its reasoning. Should the type of work they did
be a motivating factor in the reclassification, then defendants' argument must fail because, as
mentioned above, their work was to dismantle a building more than a month after the disaster.
(As we all know, that job was not completed; the building still stands.)

Plaintiff Zablocki was severed from the joint initial complaint pursuant to the Court's
Order that all plaintiffs file separate complaints. Prior to his new complaint being filed,
Zablocki had been docketed with Arsenault in 21 MC 102. In severing his complaint from
Arsenault's, Zablocki ended up in the 21 MC 100 docket. At a 21 MC 102 conference before
Judge Hellerstein, the undersigned requested the Court's guidance as to how to reunite these
two plaintiffs in the 21 MC 102 docket. The instruction was to write to Judge Hellerstein and

Hon. Alvin K. Hellerstein, U.S.D.J.
August 1, 2007
Page 5

request that he direct the clerk of court to move Zablocki into the 21 MC 102 docket. Two such requests on behalf of Zablocki were denied.

Plaintiff Arsenault did file a check off complaint in the 21 MC 102 docket in a timely manner. Arsenault has been in the off site docket since its inception. It only makes sense that a worker who worked after October 15, 2001 in a job that entailed strictly demolition be in the 21 MC 102 docket. Defendants have waited until now to try to move this case to the stayed docket because of the error that was promulgated with the Zablocki case after his complaint was separately filed. Defendants have had years to request this transfer, but never did because there was no substance to this request prior to the severance and reassignment of the Zablocki matter.

Given the fact that there is a possibility of the stayed 21 MC 100 cases being dismissed by the Second Circuit Court of Appeals, the prejudice to this plaintiff is immeasurable. As the defendants' portion of this letter suggests, the designations of these dockets are not immutable. In this letter, Tully does not agree with Deutsche Bank as to the definition of the World Trade Center site. But they both agree that the nature of the work has some weight. These defendants then proceed to mischaracterize the nature of the work performed by these plaintiffs as clean up and debris removal. Should this be a deciding factor, then it clearly does not support moving this plaintiff into a docket with such workers and their request must be denied. Furthermore, it seems highly prejudicial to move a plaintiff into a stayed docket at such a late date when the case has not been previously classified as such nor has this plaintiff been given the opportunity to make timely objections on his own behalf (with all respect to, and admiration for, the papers filed on behalf of the plaintiffs in the 21 MC 100 docket).

Hon. Alvin K. Hellerstein, U.S.D.J.
August 1, 2007
Page 6

The request of the defendants to move Kirk Arsenault's case from its present place in the 21 MC 102 docket into the 21 MC 100 docket should be in all respects denied and as the request is based mostly on the reassignment of the Zablocki action, the Court is asked to reconsider its placement of the Zablocki action.

Respectfully submitted,

_____s/_____
Mark Weber, Esq.
MOUND COTTON WOLLAN & GREENGRASS
Counsel for Tully Construction Co. Inc., Tully Industries, Inc.


_____s/_____
James E. Tyrrell, Jr., Esq.
PATTON BOGGS LLP
Counsel for Tully Construction Co. Inc., Tully Industries, Inc.


_____s/_____
Marc D. Crowley, Esq.
DAY PITNEY LLP
Counsel for Deutsche Bank Trust Company Americas

_____s/_____
Robin S. Wertheimer
WERTHEIMER ASSOCIATES, P.C.
Counsel for Plaintiff Kirk Arsenault

# EXHIBIT H

21 MC 102

In Re World Trade Center Lower Manhattan Disaster Site Litigation

| Plaintiff | Case Number |
|-----------|-------------|
| Byron Acosta | 07cv1552 |
| Luis Adriano | 07cv4445 |
| Gladys Agudelo | 07cv4446 |
| Enrique Ali | 07cv1554 |
| Raul Allivar | 05cv9821 |
| Maria E. Alvarez and Carlos Chavarriage | 05cv10135 |
| Jose Alvarracin | 07cv1556 |
| Ivan Ascencio | 07cv1460 |
| Marcelo Atiencia | 07cv1562 |
| Peter B Bailon | 07cv5336 |
| Jose Barahona and Domenica Barahona | 07cv5550 |
| Hector Betancourt | 07cv4453 |
| Leopoldo Burgos | 07cv1473 |
| Manuel Caguana and Antonia Caguana | 06cv11968 |
| Ivan Calero and Reyna Calero | 07cv1575 |
| Wilson Calle | 07cv1578 |
| Rey R. Campoverde | 07cv5280 |
| Rodrigo Campozano | 07cv4459 |
| Edison Cardenas | 07cv1580 |
| Silvia Castillo and Segundo Castillo | 05cv1718 |
| Nancy Chuva | 07cv1589 |
| Yolanda Cintron | 06cv5631 |
| Jorge E Cortez | 07cv5394 |
| Lidia Cortijo | 07cv317 |
| Nancy Criollo and Lawrence Zenteino | 07cv4462 |
| Clara Dota | 07cv1602 |
| Jesse Drake and Susan Drake | 07cv5353 |
| Stanislaw Drozdz and Monika Drozdz | 06cv14620 |
| Inerva Duarte | 07cv1603 |
| Elvia Dutan and Wilfredo Dutan | 07cvl606 |
| Jorge Encalada | 07cvl607 |
| Luis Franco | 07cv4466 |
| Janina Frelas | 07cv1612 |
| Norberto Gallardo | 07cv5290 |
| Viviana Garcia | 07cv1617 |
| Peter Gaspar | 05cv10739 |
| Leonard Gawin and Miroslawa Gawin | 07cv1619 |
| Samuel T. Giamo and Rosemary Giamo | 06cv11676 |
| Hitien E Giraldo | 07cv5554 |
| Rosa Gualpa | 07cv4472 |
| Armando Guzman | 07cv5556 |
| Avenia Hernando and Nidia Hernando | 07cv4473 |
| Julio Hurtado and Elda Monica Hurtado | 07cv5295 |
| Manuel Idrovo | 07cv1628 |
| Edgar Idrovo | 07cv1627 |
| Jorge Inga | 07cv1629 |
| Jozef Jablonski and Agnieszka Jablonska | 07cv1630 |
| Jonas Jaramillo and Blanca Romelo | 06cv14746 |
| Marian Karus and Barbara Karus | 07cv1635 |
| Edward Kosowski | 07cv5299 |

1

21 MC 102

In Re World Trade Center Lower Manhattan Disaster Site Litigation

| Ana Lascano | 05cv9333 |
|---|---|
| **Plaintiff** | **Case Number** |
| Andrzej Lasica and Ewelina Lasica | 07cv4480 |
| Carlos Lenis and Lucia Lenis | 06cv10045 |
| Ines Leon and Luis E. Quezada | 07cv4481 |
| Cesar Leon and Agnes Dipini | 07cv63 |
| Wilmo Loja | 07cv4482 |
| Fernando Lucero | 07cv5366 |
| Rosa Medina | 07cv4491 |
| Maria E. Melendez | 07cv5397 |
| Juan Mendez and Kareen Mendez | 07cv1664 |
| Carlos Merchan and Martha Merchan | 07cv1665 |
| Eugenic Mora and Olga Mora | 06cv13168 |
| Tatiana Morales and James Fink | 07cv5370 |
| Sandra Moreno | 07cv1670 |
| Luis Naranjo and Rosa Naranjo | 05cv10738 |
| Walter Naranjo and Miriam Naranjo | 07cv4496 |
| Oscar Negrete | 07cv5371 |
| Sean O'Connell and Carole O'Connell | 07cv5374 |
| Rosa Palaguachi and Rigoberto | 07cvl680 |
| David Reynolds and Katherine Reynolds | 07cv3446 |
| Marcel Rhoden and Deirdre L. Worley | 07cv5311 |
| Maximo Riera and Fanny Riera | 07cvl519 |
| Patricio Rodas and Taina Ruiz | 07cv1694 |
| Jaime Rojas and Johanna Hernandez | 07cv451I |
| Mieczyslaw Romaniuk | 07cv5316 |
| Victor Salazar | 07cv4512 |
| Rosa Sanchez and Hector Albarracih | 06cv12488 |
| Edilberto Sanchez | 07cv5384 |
| Emanuel Santamaria | 07cv1528 |
| Gala Sarmiento | 07cv1529 |
| Edwin Sarmiento and Nora Sarmiento | 07cv4515 |
| Teresa Serrano | 05cv8937 |
| Raul Siguencia | 07cv1533 |
| Felipe Suarez | 07cv1707 |
| Samuel Sumba and Mercedes Sumba | 07cv1710 |
| Pedro Tamayo and Gabriella Tamayo | 07cv1538 |
| Nicholas Teham | 07cv5564 |
| Julia Tenezaca | 07cv1714 |
| Cesareo Teran | 07cv5389 |
| Jeanne Thorpe | 07cv1715 |
| Carlos A. Valencia and Gloria N. Bonilla | 07cv5324 |
| Rommel Vasquez and Rosa A. Gomez | 07cvl543 |
| Kattia Vazquez and Peter Vazquez | 07cvl722 |
| Severo Vega and Lila Gonzalez | 07cv4521 |
| Segundo Villarroel and Martha L. Villarroel | 07cv1546 |
| Kleber Villarruel | 06cvl3703 |
| Kevin Walsh | 06cv12608 |
| Robert Waniurski and Ewa Waniurski | 07cv4524 |
| Ancil Watson | 07cv5391 |
| Clarence Wragg and Cecilia Wragg | 06cv8125 |